## PRICE vs. EDWARDS.

### ERROR to Cole Circuit Court.

HAYDEN, *for Plaintiff in error, insists:*

1st. That the said Henry Bartlett was the principal debtor, and the said Price, Kerr, Young and Edwards were his sureties in the bond made to Curtis for the payment of the said sum of $1196 18, as stated in the bill. Gow on Partnership, 283, and note (v.) as what are debts of a partnership, and what are individual debts of a member of the firm. 2nd Greenleaf's Ev. sec. 484. The declarations of a person that he is a member of a partnership, is evidence to charge him *as such*, but not evidence to prove another person to be of the firm.

2nd. That there is no sufficient evidence in the cause, showing any erasure, or such erasure of the name of Edwards from the bond, as to render the same void as against him, or to discharge him from liability to contribute to the complainant his just proportion of the burthen created by the bond. 1st Greenleaf's Ev. p. 630-1-2-3-4-5, and note 8, p. 635-6. 2 Mason's C. Rep. 478, U. S. vs. Spalding.

3rd. That the proofs in the cause show, that the principal debtor, Bartlett, and the co-securities, Kerr and Young, were and are, all insolvent, and that the complainant has paid the joint debt and interest out of his own moneys, except $39, and that in equity and good conscience he is entitled to a decree against Edwards for the one half of the amount so paid, with interest thereon from the time of payment to the present time, and that therefore the Circuit Court erred, not

only in dismissing the complainant's bill, but also in refusing to set the decree aside, &c.; for the reasons set forth in the complainant's said motion therefor. 1st Story's Equity, sec. 496, p. 475, and authorities cited. 1 Cox, 277, Lawson vs. Wright. Grisley's Equity Evidence, 169.

STRINGFELLOW, *for Defendant in error.*

1st. Our statute having given a remedy to securities, and defined the extent of recovery as against a co-security, the complainant has no remedy in chancery; if any, only to the extent given by statute.

2nd. The erasure of defendant's name appearing on inspection of the bond, it devolved upon complainant to show that such erasure did not release defendant. The evidence proved that defendant's name was erased before the bond was delivered, and hence defendant was not liable. Greenleaf, 600; 2 Phil. on Ev., note on page 299; 9th Mo. Rep. 710, Mathews vs. Coalter; 7 Mo. Rep. 237; Ib. 588; 4 Com. Dig. page 294.

3rd. Neither the original bond, nor a *fac simile,* being before this Court, it must assume the judgment of the Circuit Court to be correct, as to the necessity on complainant to explain the erasure. That Court acted upon inspection of the instrument; this cannot be done by this Court

4th. The answer of defendant having denied that Price was a co-security, it devolved upon Price to prove this fact. It was not for defendant to prove that Price was a principal in the bond.

5th. The bond was given in consideration that Curtis, the obligee, would stop a suit instituted by him against Price and Bartlett, on a bond given by them with Zumalt and Murray, to Curtis, and would give up the first bond, and give Price and Bartlett *time on the last bond.* Price was thus a party beneficially interested in the consideration of the bond—was a principal both as to Curtis, the payee, and Edwards, the security.

6th. Price was also a party beneficially interested in the bond first given by himself, Bartlett, Zumalt and Murray to Curtis. Before the bond was delivered to Curtis, or any obligation created by any of the parties, Price had become a partner in the speculation for which the money was obtained, and had an interest in, and a right to, such money by virtue of his partnership; although when he *signed* the bond, he may have only signed as surety, yet having before its delivery, become a partner, he was no longer a mere surety, but was a principal obligor both as to Curtis and his co-obligors.

7th. The last bond itself is evidence that Price was a principal in both. Had he been on the first, and designed to continue on the last as mere surety, he would not have released Zumalt and Murray, his alledged principals, on the first bond. -

8th. The money loaned by Curtis was not for the individual shares of Bartlett, Zumalt and Murray, but was the whole capital invested, including Price's share as well as that of the others. The loan was made on a bond given by him with the others, for the benefit of him equally with the others; and even if he had in the first instance intended to be only a surety as between himself, Zumalt, Bartlett and Murray, he became a principal as to Curtis and all others, with none of the rights or privileges of a surety.

9th. This case having been decided by the Circuit Court upon evidence, and there being no exceptions to any evidence, nor any instructions asked, this Court will not interfere. The less, as instead of being a case of *gross error,* it is manifestly in accordance with the evidence.

McBRIDE, J., *delivered the opinion of the Court.*

This was a bill in chancery, filed by Thomas L. Price, complainant, against E. L. Edwards, Wm. D. Kerr, Wm. C. Young, and Henry Bart-

lett. Subsequently the bill was dismissed as against Young and Bartlett, by consent, in consequence of their insolvency.

The bill charges, that about the 2nd June, 1840, Henry Bartlett became indebted to Fielding Curtis in the sum of $1196 18, and executed to him his bond with the above named defendants as his securities; the bond was payable in twelve months after date, with ten per cent. interest thereon. That Bartlett failing to pay, Edwards, on the 16th May, 1842, paid Curtis $39, and Price on the same day also paid Curtis $80 60. On the 24th September, 1842, Price paid the further sum of $119 61; and on the 2nd June, 1843, the sum of $119 60, making Price's payments $319 80, which extinguished the interest down to the 2nd June, 1843.

That on the 20th September, 1844, Curtis sued Price alone, and on the 5th April, 1845, recovered judgment against him for the sum of $1196 18 debt, and $226 76 damages, which amount has been paid by Price, together with the costs of the suit, amounting to $13 80.

That all of the co-securities of the complainant, Price, are insolvent, except Edwards, and that therefore he has a right to have a decree against him for one equal half of the amount thus paid by complainant.

The bond, together with the record of the recovery of Curtis against Price, are made exhibits in the bill.

The defendant, Edwards, in his answer, states, that on the 2nd June, 1840, Bartlett brought to him a bond, drawn in favor of said Curtis, with a blank left for the amount, which had been signed by Bartlett, Price, Young and Kerr, and requested him, Edwards, to sign the same as surety, assuring him at the time that the amount to be inserted therein should not exceed 6 or $700. Upon this assurance, and believing that Price was a principal in the bond, he signed the same. He states that he is informed and believes that Bartlett then took the bond to Price, who filled up the blank with the sum of $1196 18, which was done without any consultation with him, Edwards, and without his knowledge or consent.

He further states, that in May, 1842, Price called on him to assist him, Price, in paying the interest then due on said bond—that believing himself still bound as security, and willing under such supposition to aid Price in paying the interest, he handed him $39 for that purpose, and the same was, by Price, paid over to Curtis, and a receipt therefor written by Price on the back of the bond, was signed by Curtis. That he had no communication with Curtis at the time of this payment, but the whole business was conducted by Price.

He also states that when he made the payment, he believed himself bound as security on the bond, but that in truth and in fact he was not bound in any manner, for that either before said bond was delivered to Curtis, or shortly thereafter, his name was erased therefrom. He is informed, and charges that his name was erased from the bond before its delivery to Curtis; but by whom it was done, he is not informed. Curtis informed him that it was erased prior to delivery. That he had no knowledge of the erasure when he advanced the $39 to Price, nor until sometime thereafter.

He further alledges, that before the bringing of this suit, Price was fully aware of the erasure of his name from the bond, and his consequent release. He denies that Price was a co-security in the bond, but affirms that he was a principal. That the bond was given as a renewal of another bond, previously given by Bartlett and Price as principals, to the said Curtis, for money borrowed by them of said Curtis, and that Young, Kerr and himself were securities in the last bond. He admits the recovery against Price, and the insolvency of Bartlett, Kerr and Young. He insists, however, that if he is liable at all, it is only for his *proportion* of the original demand; but denies his liability, *first*, because his name is erased from the bond; and *second*, because Price is principal, and not security therein.

Kerr answered, admitting his embarrassed condition, denies any personal knowledge of most of the allegations in the bill, and requires proof thereof. His answer is not sworn to.

Replications were filed to the answers. On the hearing, the following evidence was given:

1st. The complainant offered in evidence the bond of Bartlett and others to Curtis, to the reading of which the defendant objected, until the erasure was accounted for, but the court permitted the same to be read, with leave to move its exclusion at a subsequent period, if the erasure was not satisfactorily explained.

2nd. The record of the action at law of Curtis against Price.

*Fielding Curtis* testified, that prior to the execution of the bond mentioned in the bill, John Murray and Joseph Zumalt came to borrow of him $1000 for themselves and Henry Bartlett, for buying cattle—they told him that B. said he could give any security in Jefferson City—he, witness, told them if they would give Thomas L. Price for security, he would let them have the money. In a few days they returned with a note signed by Bartlett, Murray, Zumalt and Price, for $1000, and obtained the money. Sometime thereafter Bartlett paid witness $200 in-

34

terest. Afterwards, witness sent the note to Mr. Lisle for collection—that Bartlett and Price, who lived in Jefferson City, after suit was brought came to his house with a bond signed by Bartlett, Price, Kerr, Young and Edwards, being the bond given in evidence, which they desired him, witness, to take in lieu of the one upon which suit had been brought—that he consented, and dismissed or stopped the suit againt Bartlett and Price. That very soon after Bartlett and Price had left his house, A. W. Rutherford and Gen. Ellis, two of his neighbors, came in—he showed them the bond which B. & P. had just left with him, and they discovered that the name of E. L. Edwards signed to said bond had been erased—he told them that he did not know how it had been done, or how the name of Edwards come to be marked out, as no person had had said bond after it was left with him by Bartlett and Price, until they, Rutherford and Ellis had seen it—that Bartlett and Price had left his house but a few moments prior to their arrival, and no one else had seen the note.

He further testified, that after the years' interest became due, he came to Jefferson, saw Price, and was by him introduced to Edwards. That afterwards Price paid him $86 as interest on said bond, for himself, and also $39 for Edwards, and he, Price, entered the credit for both sums on the back of the note. That Edwards was not present when Price made the payment—it was made in a small brick house, where Price got the money out of a table drawer—the office, he, Price, said was Edwards'.

The interest for 1843 not having been paid, witness sent the bond to Lisle for collection, when Price and Edwards came to his house, and asked further indulgence on said bond, and that the suit should be dismissed—he was not inclined to grant time, until Edwards insisted, and stated that it would ruin him if the collection was pressed—witness thereupon consented, and Price paid him the interest then due, and he and Edwards left. Edwards on the next day sent the bond back to witness, as he and Price had promised to do, with a request that he would give the credit on the bond, for the interest which Price had paid. That Price had paid all the interest which had been paid on the bond, except (as he stated) the $39 paid by Edwards—that since the last payment of interest, suit had been instituted against Price, on the bond, judgment obtained, and the same satisfied by Price.

Cross-examined. When Murray and Zumalt came back the second time to my house with the note to get the money, they told me that Price was a partner with them and Bartlett, in the cattle speculation and equal with them in the note. That from what they stated to him he considered Price a principal in the note, and that the loan was to Price as well as the others. He had never seen Edwards until the time

mentioned in his examination in chief—that Edwards did not see said bond on that day, nor had he any chance of seeing it until suit was brought thereon, as the bond was always in witness' possession—that he had no conversation with Edwards about the bond until after suit was instituted.

*John Murray* testified, that Joseph Zumalt and himself went to Curtis', who resides in Boone county, to borrow $1000, for themselves and Bartlett, for the purpose of buying cattle for speculation; they stated to Curtis that Bartlett could give him any security in Jefferson City—the name of Price was mentioned, and Curtis agreed to take him—that he and Zumalt then left Curtis and returned home. That he and Bartlett went to Jefferson, with a note signed by Bartlett, himself and Zumalt—that they requested Price to go their security to Curtis for the money, which he agreed to do, and went into his counting room to a desk and signed the note. That soon after he had signed the note, and before they had left the house, Price said to witness and Bartlett, that he would like to have a part with them in the speculation—they told Price they had no objection, and if Zumalt was willing they would take him in as partner: this conversation took place immediately after the signing of the note by Price, and several days before they got the money from Curtis—that there was nothing said at the time about what interest Price was to have, but supposed it was to be an equal interest with himself, Bartlett and Zumalt—that when he and Bartlett saw Zumalt, he stated that he had no objection to Price's becoming a partner, and they informed Price of the fact. He further stated, that Price said he had some cattle at his farm above Jefferson City, that he wished to sell, and offered to take $60 for them—that Bartlett promised to go and see the cattle, and if they were worth $60 they would buy them—that Bartlett saw the cattle, was satisfied with the price and took them—that Price had nothing to do with buying or driving the cattle, they were purchased and drove to market by Bartlett, Zumalt and himself.

Cross-examined. When Price asked to come in as a partner, he asked him if he would bear his proportionable part in the event of a loss? when Price replied—"Boys, by God, there must be no loss." That he considered Price a partner in the whole speculation, but that his particular interest was not definitely settled—that his understanding was, that Price was to have one-fourth part of the profits, or to share one-fourth of the losses—that he advanced no money, but that all the money they had to buy the cattle with, was the $1000 borrowed of Curtis—that when he and Zumalt went to Curtis for the money, they told Curtis that Price

was a partner, and the money was lent to them with that understanding with all the parties at the time.

*Joseph Zumalt* testified, that he and the witness, Murray, applied to Curtis to borrow $1000, that Curtis told them they could have the money if they would make him safe—they told him that Bartlett said he could give any security in Jefferson City. Curtis said they could get the money if they would give Price as security; they then returned home and informed Bartlett what Curtis said. The next day, or the day after, he, Bartlett and Murray, went over to Jefferson City, and whilst there Bartlett presented a note drawn in favor of Curtis for $1000, signed by Bartlett, Murray and himself, and asked Price if he would go their se-curity. Price agreed to do so, and signed the note as security. Some days thereafter, he, witness and Murray, took the note to Curtis and got the $1000—after the money had been obtained several days, Murray asked him if he was willing that Price should have an interest in the cattle speculation, he made no objection, but remarked, they would see Price and Bartlett about it. The first time he saw Price, he and Bartlett were together, when Price said to witness that he had been talking to Bartlett about taking some of his cattle which he had at his farm, which he would put in at $60—that they might sell the cattle, and all over $60 that the cattle should sell for, that he would be partners in—that he did not consider Price a partner in the cattle speculation any further than the profit on the $60 worth of cattle he had sold them—that was all he heard said about the cattle speculation. Bartlett went after the cattle they got from Price. He, witness, never considered Price any thing more than a security to the note.

Cross-examined. Witness was asked if he had not said that Price was a full partner with them in the cattle speculation, and principal in the original note to Curtis, when he answered, that he had not. He was asked if he did not tell Curtis when he got the money that Price was a partner with them, he answered, that he did not—that it was after the money had been received from Curtis that Price put his cattle in. He only considered Price a partner for what his cattle sold over $60. He was asked if he had told Curtis, or Gen. Ellis, or A. W. Rutherford, or M. L. Jefferson, that Price was a partner with them in the cattle specu-lation, and principal in the note to Curtis, he said he had not told them any such thing—that he might have said something to Ellis about the matter, but that if he did, he was drunk.

The defendant then called *Fielding Curtis*, who testified, that when Murray and Zumalt got the money from him, they told him that Price

was a partner in the speculation in cattle, and equal with them in the note—that after he had brought suit against Price for the collection of the money on the last bond, he was informed by his attorney that Price had put in a plea to avoid the payment of the money because the name of Edwards was erased from the bond. That he saw Zumalt and Murray about the matter, and they told him that Price was a full partner with them—that he was a principal in the first note—that they would swear it, and witness had them summoned to give evidence on his part to prove those facts—that they said the same thing to him on several occasions.

*A. W. Rutherford* testified, that he called in at Curtis' very soon after Price and Bartlett had left, as he understood from Curtis—that Curtis took the bond which he said Price and Bartlett had left with him in lieu of the original note, and handed to witness to look at—that he discovered the name of Edwards was erased, and mentioned to Curtis, who said it was done then when they left it with him, and expressed some uneasiness about it—that the name of Edwards was written with a pale or red looking ink, and the erasure had been made with a very black ink— that there were three marks across the name, one across each of the two first letters, and one across the word "Edwards." No person was present except Curtis and himself at the time—Curtis had no white person living with him. Whilst they were examining the bond, Gen. Ellis came in, and the bond was shown to him also. He further testified that he had heard Zumalt say that Price was a partner with them in the cattle speculation, and a principal in the note to Curtis—that while the suit between Curtis and Price was pending, he saw Zumalt in Jefferson City, while the circuit court was in session, that Zumalt told him he was here as a witness for Curtis in that suit, to prove that Price was a partner with them, and principal in the note.

*Gen. Ellis* testified the same in substance that Rutherford had testified concerning the erasure of the name of E. L. Edwards from the bond· He further testified, that some time previous he was crossing the Missouri river with the witness, Zumalt, when the Curtis note was spoken of, and that Zumalt told him in that conversation that Price was a partner with them in the cattle speculation, and a principal in the bond to Curtis—that Zumalt had been drinking some at the time, but not enough to prevent his knowing what he was saying.

*M. L. Jefferson* testified, that during the sitting of the Cole Circuit Court, at the August term, 1846, he fell in with the witness, Zumalt, going from the court house, when Zumalt told him that Price had him, Zumalt, summoned over here as a witness in the case between him, Price

and Edwards—that it was a shame for Price to try to make Edwards pay any of that money—that Price was a partner with them in the cattle speculation, and a principal with Bartlett in the debt to Curtis, that they borrowed the money together, and purchased the cattle in partnership.

*John Murray* testified, that Zumalt did not come with Bartlett and himself to Jefferson at the time Price signed the note—that the proposition of Price to become a partner, was made on the same day, and at the same time he signed the note—was assented to then by himself and Bartlett, and they agreed to submit it to Zumalt, and did so—that Zumalt agreed to let Price in as a partner, and that they imformed Curtis of the fact at the time they got the money from him—that they bought the cattle they got from Price for $60—that it was not in reference to those cattle that Price proposed becoming a partner, but in the general concern.

Whereupon the court decreed that the bill of complaint be dismissed, to which the complainant excepted, and has brought the cause to this Court by writ of error.

Two grounds of defence are set up and relied upon by the defendant to defeat a recovery against him:

1. The complainant being a partner in the cattle transaction with Bartlett, Murray and Zumalt, and the money having been obtained for the benefit of the firm, he was a principal in the bond, and has therefore no right to contribution against a mere security.

2. The signature of the defendant to the bond having been erased before the delivery of the bond to Curtis, he is therefore not liable as cosecurity to the complainant.

Is the first proposition relied upon by the defendant sustained by the evidence ? The first witness which he examines on the subject is Fielding Curtis, the obligee of the bond ; his testimony is incompetent for that purpose, for the only knowledge which the witnes had, he derived from the statement of Zumalt and Murray, whose statements although binding on themselves, could not make Price a partner with them.— The next witness is John Murray, who states that after Price signed the note as security for Bartlett, Zumalt and himself, Price remarked that he would like to have a part with them in the speculation ; they told him if Zumalt was willing, that they had no objection. Price was asked if he would share the losses with them, when he affirmed that there must be no loss. What interest Price was to have, was not agreed upon, but witness supposed it to be one-fourth. They saw Zumalt and informed him of Price's desire to become interested, and he assented thereto,

which assent was communicated to Price. Price advanced no money, nor participated in the purchase, driving or sale of the stock. Joseph Zumalt on this point says, that some days after the money was obtained from Curtis, Murray informed him of Price's wish to become a partner in the speculation; he made no objection, but remarked that they would see Price and Bartlett about it. He afterwards saw Price and Bartlett together, when Price said he had been talking to Bartlett about taking some of his cattle which he would put in at $60, and all over that sum, which the cattle should sell for, they would be partners in. This was the extent to which he considered Price a partner.

Several witnesses were then examined for the purpose of discrediting Zumalt. Their evidence shows that Zumalt was guilty of wilfully misrepresenting the facts, or that what information he possessed on the subject was obtained whilst in a state of intoxication, and that consequently his recollection is very confused.

It is most obvious that whatever conversation the parties had on the subject of a partnership, occurred prior to the time the money was obtained from Curtis; otherwise, how could Murray and Zumalt have communicated to Curtis the fact that Price was a partner with them and Bartlett, and consequently a principal in the note. That a conversation took place between Price and the cattle speculators, on the subject of a partnership is evident from the statement of Zumalt himself, but, he says, it was a partnership in a lot of cattle which Price was proposing to sell them for the sum of $60. This would truly be a small business; besides it is not very probable that after giving Price what he asked for his cattle, they would further agree to give him one-fourth of the amount obtained by them for the cattle over the price given.

The proposition of Price to become a partner was made, however, under circumstances which might well create a doubt whether in fact he intended to become interested in the transaction. He had just conferred a favor on Bartlett and company by becoming their security for the money with which they were going to operate; and as a further evidence of his good feeling towards them and by way of encouragement, he may have made the remark "that he would like to have a part with them in the speculation." If he really desired to become interested, as a partner, he would doubtless have pressed the subject further and learned from them the terms and conditions upon which he was to become interested. What amount he was to advance—what interest he was to take, and what duties to perform, or burdens to bear. No agreement of this character took place. It is true, that so far as third parties are con-

cerned, it is not necessary to the liability of partners, that they should settle definitively the terms of their association. The enquiry would be, did a partnership exist? In ascertaining this, the fact of their having made no agreement as to the terms of their partnership might be referred to as a circumstance tending to disprove the existence of a partnership.

As an adjunct to the foregoing question, it is said that even admitting the existence of the partnership, as insisted upon by the defendant, still Price is not liable as principal on the bond, for the bond was given for money to be advanced by Bartlett, Murray and Zumalt to the concern, and not as an advancement for Price. It is conceded, that if the money borrowed was for the individual advancement of the parties named, (Price having advanced his portion of the capital) that then Price executing the bond would sustain the same relation thereto, that any other individual would. But as Price advanced nothing, and the only capital used were the funds obtained on the bond, a court of equity would be slow to give him a decree for contribution, against a mere security, who was otherwise wholly unconnected with the transaction.

Next, as to the erasure of the name of E. L. Edwards from the bond, and at what period was it done? Whether there was an erasure, was a question to be decided by inspection of the bond. We have not the advantage of looking at the bond, but if we were to judge from the copy set out in the record, we should not hesitate to say that the name of the defendant had been erased, and intentionally done. The court below decided that the name was erased and the evidence in the case fully sustains the decision of the court.

The erasure being established, it becomes important to enquire by whom, at what time, and under what circumstances was it made? The evidence in the cause shows, that two or three years prior to the execution of the bond in question, Bartlett, Murray, Zumalt and Price executed their note to Curtis for $1,000—the interest for two years was paid by Bartlett—the third year's interest not being paid, Curtis instituted suit against Bartlett and Price, two of the obligors, to recover the amount of the note and interest. After suit brought, Bartlett and Price went to Curtis' in Boone county, with the bond in controversy, and prevailed with him to take this bond in lieu of the note sued upon, dismiss his action against them and give them further time for payment. The bond was delivered by them to Curtis, and they left; shortly thereafter Rutherford and Ellis come to Curtis', when he showed them the bond and they discovered that the name of Edwards had been erased by drawing a pen across it. Curtis states that he did not do it, and that no one else had an

opportunity of doing so after the delivery to him of the bond by Bartlett and Price. I assume, therefore, that the name was erased before the bond was delivered.

The bond being in the possession of Bartlett and Price, they are responsible for the erasure, unless they can explain, satisfactorily, how the erasure took place. And so, Price sueing and endeavoring to recover of Edwards, must explain how the erasure was made.

It is insisted that Price did not make the erasure, because it was against his interest to release Edwards. So it may be said of Bartlett and Curtis ; the former desiring to obtain further indulgence on the debt would be interested in procuring a bond about which there could be no cavil ; whilst the latter would hazard the loss of his whole debt by such an act. Edwards himself did not perpetrate the act after the delivery of the bond, for he was not present, and if he made the erasure before the delivery, then the bond is not his and he is not responsible.

We are unable from the evidence before us, to ascertain certainly, the circumstances attending the erasure, unless we have a clue in the answer of Edwards, who states, that Bartlett presented the bond to him, with the amount in blank, assuring him at the time that the sum to be inserted therein would not exceed six or seven hundred dollars; he thereupon signed the bond, and Bartlett then took it to Price, who filled up the blank space with the sum of $1196 18. This amount was nearly double that represented by Bartlett, and about one-fifth more than the note then held by Curtis. Thus finding the amount necessary to be inserted in the bond so much greater than he had represented to Edwards, and disposed to deal toward him in good faith, and thinking perhaps that the bond was ample without it, Bartlett may have made or caused the erasure, at the time the bond was filled up. Acting honestly with a friend who had gone his security, Bartlett should either have informed Edwards of the amount inserted in the bond, or have erased his name therefrom. If the erasure took place at the time when the bond was filled up, then Price was advised of the fact, for the filling up of the bond is in his hand writing.

When the bond was delivered by Bartlett and Price, they represented it as the bond of Edwards and others, and Curtis received it as such. If the signature of Edwards had never been affixed to the bond, their representation to Curtis would have been an imposition on him, without making Edwards liable. If his name was erased by them, before delivery to Curtis, then the representation made by them, to him, was not only a deception practised on him, but a wrong done to the other securities

on the bond. The controversy now before us, is not one, however, between Curtis and Edwards, nor between the other securities on the bond and Edwards, but between Price, who is responsible for the erasure, until explained, and Edwards, whose name had been erased. Had Price and Edwards alone been securities on the bond, and prior to its delivery to Curtis, Price had voluntarily stricken the name of Edwards therefrom, I know of no principle of law which would enable him, thereafter, to recover from Edwards any part of the amount of the bond, as a co-security of his. The law will not permit him thus to play fast and loose at his pleasure.

It is contended that the subsequent conduct of Edwards amounts to a re-delivery of the bond. If, with a knowledge of the erasure, Edwards afterwards acknowledged the bond to be his, then he would unquestionably be liable, for whilst the erasure operates to discharge him from legal liability, it does not prevent him from again binding himself, if he choose to do so. In his answer he denies having had knowledge of the erasure when he paid $39, part of the interest then due on the bond. Curtis' evidence goes to sustain this statement of the answer, for he says that the bond was in his possession from its delivery to him, until suit was brought on it, and that during that time Edwards had no access to it.— He also states that after the institution of suit, Price and Edwards came to his house to obtain further indulgence, which he hesitated to grant, until assured by Edwards that if a collection of the debt was pressed, it would ruin him. Curtis then consented to dismiss the suit, when Price paid him the interest then due, and it was agreed that they should send him the bond on the next day, which they did, accompanied with a letter from Edwards, requesting him to sign a receipt for the amount paid by Price, which he did, and that was the last interest paid on the bond.

It is left conjectural by Curtis' evidence, whether the receipt which he was requested by Edwards to sign, was endorsed on the bond, or on a separate piece of paper. If endorsed on the bond by Edwards, a presumption might arise, that he had examined the bond, and consequently saw the erasure; but if on a separate paper, the presumption would not be so strong: in either case, however, bare presumptions should not be indulged against the positive denial of a sworn answer. I do not therefore think that the defendant's subsequent conduct amounted to a re-delivery of the bond.

Another view of the subject taken by defendant's counsel, is this :— The first note executed by Bartlett and others, with Price as security, was past due when Edwards became a party in a new note, for the pur-

pose of obtaining further time for the obligors. That note being past due, Price, under our statute, had become liable as principal, and thus being in effect principal with Bartlett and others, Edwards' undertaking should be construed as that of security for Price, as well as Bartlett and others, the originals in the note.

If Edwards become security under the belief that Price was one of the principal in the original transaction, it would be imposing a much greater burden on him than he anticipated, by now holding that Price was only a security himself and liable as such. It might very well be, that Edwards would readily and willingly become a security in a note wherein Price was one of the principals, believing him entirely responsible, when he would not be willing to lay himself liable as co-security with him in a bond where the solvency of the principals was at all questionable.

The answer of Edwards avers positively, that he believed at the time he executed the bond, as security, that Price was a principal therein.—— If so, I am of opinion that a court of chancery should not decree against him, on a bill by Price, who was already bound for the debt.

The judgment of the Circuit Court ought to be affirmed, and the same is affirmed upon a division of the court.

SCOTT, J., did not sit in the case.